UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DANIEL JANJIGIAN,<br>*Plaintiff*<br><br>v.<br><br>**LIBERTY MUTUAL INSURANCE COMPANY,**<br>*Defendant* | §<br>§<br>§<br>§  Case No. 1:21-CV-919-SH<br>§<br>§<br>§<br>§ |

**ORDER**

Before the Court is Defendant's Motion for Summary Judgment (Dkt. 23), filed September 9, 2022. On November 30, 2021, the District Court reassigned this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73, and Rule CV-72 of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules"). Dkt. 16.

## I.  Background

Plaintiff Daniel Janjigian brings this insurance coverage lawsuit against Defendant Liberty Mutual Insurance Company after Defendant denied coverage for certain property damage to Plaintiff's former residence.[1]

**A.  The Policy**

On December 31, 2018, Defendant issued Plaintiff a one-year homeowner's insurance policy (Policy No. H37-298-609632-40) (the "Policy") to provide insurance coverage for his home residence, located at 3313 Oxsheer Drive, Austin, Texas 78732 (the "Property"). Dkt. 23 at 11-61.

---

[1] Plaintiff is a Texas resident and Defendant is a Massachusetts company with its principal place of business in Boston, Massachusetts. Plaintiff's Petition ¶¶ 3-4 (Dkt. 1 at 6).

1

Relevant to the issues in this lawsuit, the Policy provides the following coverage and exclusions for accidental water damage:

> **Unless otherwise excluded we cover damage to A - Dwelling and B - Other Structures from a Sudden and Accidental Discharge or overflow of Water or Steam** from within a plumbing or drain system, heating system, air conditioning system, or household appliance.
>
> This coverage does not include loss:
>
> a. directly or indirectly caused by or resulting from seepage, meaning a gradual, continuous, or repeated seepage or leakage of water, steam or fuel over a period of fourteen days or more, resulting in damage to the structure, whether hidden or not:
>
>> (1) From a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
>>
>> (2) From within or around any plumbing fixtures, including, but not limited to, shower stalls, shower pans, shower baths, tub installations, sinks or other fixtures, including ceilings, walls, or floors.

Dkt. 23 at 43.

### B. The Leak and Ensuing Dispute

In August 2019, Plaintiff no longer living at the Property, which was on the market to be sold. Plaintiff alleges that, on August 17, 2019, he went "to the residence to remove items and discovered water everywhere." Plaintiff's Petition ¶ 10 (Dkt. 1 at 8). Plaintiff alleges that the water leak was a result of a "rapid onset" of water from a leak in the kitchen of the Property. *Id.*

After Plaintiff submitted an insurance claim to Defendant for the property damage, Defendant retained S&D Plumbing to investigate the cause of the water leak. Dkt. 23 at 3. After investigating the leak, S&D Plumbing opined that the source of the water was "a small leak on the angle stop for the refrigerator ice maker," and that the cause of loss was from "normal wear & tear, long term leak." *Id.* at 76. S&D Plumbing further told Defendant that: "Given the time [two months earlier]

[Plaintiff] moved out and the slow nature of the leak, with the distance that the water traveled and the amount of water that was found when they discovered it (standing water all through kitchen and almost to living room), this leak would have been occurring for longer than 2 weeks." *Id.* at 79. Defendant also retained Al Berryhill, a water restoration contractor expert, to investigate the cause and scope of the damage. Berryhill opined that the damage claimed by Plaintiff

> did not reflect water damage that could have reasonabl[y] occurred as a result of the alleged water leak. Some additional moisture contribution likely resulted from the refrigerator water supply line leak, but based on my experience with similar supply line leaks, it is likely that supply line valve did not properly close when the refrigerator was removed and allowed water onto the tile floor. This leak, repaired by S&D Plumbing, did not reasonably cause or contribute to the damage depicted in the photos and would have been easily cleaned up.

*Id.* at 71. Based on these reports, Defendant denied Plaintiff's claim based on the Policy's exclusion for "loss directly or indirectly caused by or resulting from seepage, meaning a gradual continuous, or repeated seepage or leakage of water." Plaintiff's Petition ¶ 10 (Dkt. 1 at 8).

On September 3, 2021, Plaintiff filed this lawsuit in Travis County Civil County Court, alleging breach of contract, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and common law and Texas Insurance Code bad faith claims. *Janjigian v. Liberty Mutual Ins. Co.*, No. C-1-CV-21-004169 (Co. Ct. at Law No. 1, Travis County, Tex. Sept. 2, 2021); (Dkt. 1 at 6-16) ("Plaintiff's Petition"). On October 13, 2021, Defendant removed this case to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1441(b)(2).

Defendant now moves for summary judgment on all of Plaintiff's claims under Federal Rule of Civil Procedure 56(a), arguing that Plaintiff's property damage is not a covered loss under the Policy. Plaintiff did not file a response.

## II. Legal Standards

**A. Rule 56(a)**

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.*

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). "Rule 56 does not impose upon the district

4

construction," and "must give the policy's words their plain meaning, without inserting additional provisions into the contract." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008). Accordingly, courts must begin their analysis with the terms of the policy, because it is "presume[d] parties intend what the words of their contract say." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) (citation omitted). The words of the policy "are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense." *Id.* (citation omitted). All parts of the policy are read together, and courts must give "effect to each word, clause, and sentence, and avoid making any provision within the policy inoperative." *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010).

In insurance coverage disputes, Texas law directs courts to apply the following burden-shifting scheme: Initially, the insured has the burden of establishing coverage under the terms of the policy. *Gilbert*, 327 S.W.3d at 124. If the insured proves coverage, then to avoid liability the insurer must prove the loss is within an exclusion. *Id.* If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage. *Id.*

### III.  Analysis

Defendant argues that it is entitled to summary judgment on all of Plaintiff's claims because Plaintiff's property damage was caused by a long-term water leak, which is expressly excluded under the Policy. The Court addresses each of Plaintiff's claims in turn.

#### A.  Breach of Contract

To plead a claim for breach of an insurance contract, a plaintiff must prove: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result. *Vizza Wash, LP v. Nationwide Mut. Ins.*

6

*Co.*, 496 F. Supp. 3d 1029, 1038 (W.D. Tex. 2020). Plaintiff has the burden of establishing coverage under the terms of the Policy. *Gilbert*, 327 S.W.3d at 124. To show a breach of the Policy, Plaintiff must show that Defendant failed to pay for a covered loss under the Policy.

As noted, the Policy provides coverage for "a Sudden and Accidental Discharge or overflow of Water or Steam from within a plumbing or drain system, heating system, air conditioning system, or household appliance," but excludes coverage for a loss "directly or indirectly caused by or resulting from seepage, meaning a gradual, continuous, or repeated seepage or leakage of water, steam or fuel over a period of fourteen days or more, resulting in damage to the structure, whether hidden or not." Dkt. 23 at 43.

Defendant has submitted uncontroverted summary judgment evidence that the claimed water damage to the Property was caused by a long-term water leak that lasted more than fourteen days. For example, Defendant relies on the report from S&D Plumbing averring that the source of the water was "a small leak on the angle stop for the refrigerator ice maker," and that the cause of loss was from "normal wear & tear, long term leak." Dkt. 23 at 76. In addition, Defendant relies on Al Berryhill's expert report, in which Berryhill also opines that the damage claimed by Plaintiff "did not reflect water damage that could have reasonabl[y] occurred as a result of the alleged water leak." *Id.* at 71. Plaintiff has failed to come forward with any evidence to refute these findings, and the Court accepts these facts as undisputed. *Eversley*, 843 F.2d at 174.

Because Defendant's evidence demonstrates that the water damage at Plaintiff's Property was caused by "a gradual, continuous, or repeated seepage or leakage of water . . . over a period of fourteen days or more," there is no coverage under the Policy and Defendant properly denied Plaintiff's insurance claim. Dkt. 23 at 43. Accordingly, Plaintiff fails to show a breach of the Policy. *See Vizza Wash*, 496 F. Supp. 3d at 1038.

## B. Extra-Contractual Claims

Plaintiff also alleges that Defendant's investigation into and denial of Plaintiff's insurance claim (1) violated the Texas Deceptive Trade Practices Act; (2) breached Defendant's common law duty of good faith and fair dealing; and (3) breached its duty of good faith under the Texas Insurance Code.

Under the common law, an insurer breaches the duty of good faith and fair dealing if it "has no reasonable basis for denying or delaying payment of a claim." *Henry v. Mut. of Omaha Ins. Co.*, 503 F.3d 425, 429 (5th Cir. 2007).

> Similarly, causes of action against insurers for bad faith under the DTPA and the Insurance Code require the same predicate for recovery as common law claims: Plainly put, an insurer will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for denial of that coverage.

*Id.* (cleaned up); *see also USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018) ("The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy."); *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 602 (Tex. 2015) ("We have held that, '[a]s a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered.'") (quoting *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)). Because Plaintiff's claim was not a covered loss under the Policy, Defendant's denial of that claim was reasonable. *Henry*, 503 F.3d at 429.

Although the Texas Supreme Court has "left open the possibility that an insurer's denial of a claim it was not obliged to pay might nevertheless be in bad faith if its conduct was extreme and produced damages unrelated to and independent of the policy claim," Plaintiff does not allege such extreme conduct or seek such independent damages in this case. *JAW The Pointe*, 460 S.W.3d at 602. Accordingly, Plaintiff's extra-contractual claims fail.

## IV.  Conclusion

Because Plaintiff has not shown that his losses to the Property were covered under the Policy, all of his claims fail. Accordingly, Defendant's Motion for Summary Judgment (Dkt. 23) is **GRANTED** and all of Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

The Court will enter a final judgment in a separate order, pursuant to Federal Rule of Civil Procedure 58(a).

**SIGNED** on October 17, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE